## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMOTHY ALVES, an individual,<br><br>           Plaintiff,<br><br>   v.<br><br>UNITED STATES OF AMERICA,<br>DEPARTMENT OF THE ARMY, ARMY<br>CORPS OF ENGINEERS, WALLA<br>WALLA DISTRICT,<br><br>           Defendant. | Case No. 3:19-cv-00044-REB<br><br><br>**MEMORANDUM DECISION AND<br>ORDER RE: DEFENDANT'S MOTION<br>TO DISMISS (DKT. 25)** |

Pending is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 25). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## PROCEDURAL BACKGROUND

Plaintiff, Timothy Alves, sues the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, seeking damages for Alves's personal injuries. FAC ¶¶ 1–5 (Dkt. 24). On August 15, 2016, Plaintiff suffered serious injuries to his left hand, arm, and shoulder, including amputation of his hand, after being caught in a cable winch system alleged to be owned by the Defendant (through the U.S. Army Corps of Engineers) which is used to adjust dock levels and a fuel barge at the Dworshak Reservoir in Clearwater County, Idaho. *Id.* ¶¶ 2, 9, 17–20; Answer ¶¶ 2, 9 (Dkt. 9). The winch system is located in Dworshak State Park; however, the marina facilities are owned by Defendant and leased to the Idaho Department of Parks and Recreation under a long-term lease. Plaintiff alleges that his injuries were caused

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS – 1**

by a mechanical failure of the winch system which stemmed from the negligent and wrongful

acts or omissions of Defendant or the defective design of the winch system.  FAC ⁋⁋ 19–21.

Before he filed the lawsuit, Plaintiff filed an administrative personal injury claim with the

U.S. Army Corps of Engineers (the "Corps"), in which he said:

> It is alleged and believed that the Army Corp[s] of Engineers is the owner of the
> winch . . . and that [it] retained the ultimate right and responsibility for the
> maintenance and satisfactory working conditions of the winch. It is alleged and
> believed that the winch break [sic] failed due to a lack of maintenance and that the
> winch is an inherently dangerous piece of equipment. The Army Corp[s] of
> Engineers had a duty to maintain the winch and ultimate responsibility for the
> inherently dangerous winch system which caused damages to Mr. Alves.

(Dkt. 19-6 at 5).  The claim was denied.  (Dkt. 19-7 at 2).  In its denial letter, the Corps stated

that an investigation "found no negligence on behalf of Government employees in maintaining

the winch system."  Further, the Corps said that the system was leased to the State of Idaho under

terms which provided that "even if there was an issue with maintenance, the State of Idaho

would be responsible."  *Id.*

Plaintiff alleges that Defendant was required, but negligently failed, to inspect and

maintain the winch system in a safe working condition.  FAC ⁋ 15.  Additionally, Plaintiff

alleges that Defendant was required, but negligently failed, to warn of the dangers associated

with operating the winch system.  *Id.* ⁋ 16.  Plaintiff further pleads that he complied with the

requirements of the Federal Tort Claims Act prior to bringing the instant action.  *Id.* ⁋⁋ 5–8.

Over Defendant's objection, Plaintiff was granted leave to amend his Complaint to add a

liability theory based on defective design.  (Dkt. 23.)

Defendant now moves to dismiss Plaintiff's First Amended Complaint.  (Dkt. 25.)

Defendant contends that this Court lacks jurisdiction under Federal Rule of Civil Procedure

12(b)(1) to consider any of Plaintiff's claims due to the discretionary function exception to the

FTCA.  It further contends that Plaintiff has failed to state a claim with respect to his design

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS – 2**

defect theory of liability, so that claim is separately subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) even if the overall case is not dismissed.

## LEGAL STANDARD

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction; if there is no subject matter jurisdiction, the claim must be dismissed.  FED. R. CIV. P. 12(h)(3).  The party bringing suit must demonstrate that jurisdiction is proper in the federal court.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Thus, the plaintiff bears the burden of proof in responding to a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.  *Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).  However, where a defendant contends that the allegations in the complaint are insufficient to establish subject matter jurisdiction as a matter of law, those allegations must be taken as true.  *Whisnant v. U.S.*, 400 F.3d 1177, 1179 (9th Cir. 2005).

When the government seeks dismissal by invoking the discretionary function exception to the FTCA, "[t]he plaintiff has the burden of showing there are genuine issues of material fact as to whether the exception should apply, while the government bears the ultimate burden of establishing that the exception applies."  *Miller v. United States*, 163 F.3d 591, 594 (9th Cir. 1998).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS – 3**

unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court "must take all of the factual allegations in the complaint as true," but it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 678; *see also Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comm. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (citation omitted).

## DISCUSSION

### 1.  The Discretionary Function Exception to the Federal Tort Claims Act

The Federal Tort Claims Act waives sovereign immunity, meaning that the federal government can be held liable "to the same extent as a private individual under like circumstances" with respect to tort claims brought against the government arising out of the negligent conduct of government agents acting within the scope of their employment.  28 U.S.C. § 2674.  There remain limits, however, to that waiver of sovereign immunity, to include where the government is performing a "discretionary function."  This exception immunizes the United States against

> [a]ny claim based upon an act or omission of an employee of the Government … based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).  The exception "restores the government's immunity in situations where its employees are carrying out governmental or 'regulatory' duties."  *Faber v. U.S.*, 56 F.3d 1122, 1124 (9th Cir. 1995).  Thus, when the exception applies to a plaintiff's claim, the government has not waived its immunity from suit and courts lack jurisdiction over such claim.  *O'Toole v. United States*, 295 F.3d 1029, 1033 (9th Cir. 2002).

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS – 4**

This discretionary function exception "marks the boundary between Congress's willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). It is designed to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)).

Whether the discretionary function exception is implicated in particular circumstances is determined by a two-part test. First, the exception applies only to acts that are discretionary in nature, which necessarily involve an element of choice. *Berkovitz*, 486 U.S. at 536. That discretionary "choice" requirement is not satisfied where a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive." *Id.* Hence, if an action is not discretionary, it cannot be shielded under the discretionary function exception. *Whisnant*, 400 F.3d at 1181.

Second, courts consider whether the challenged action is of the type Congress meant to protect – that is, whether the action involves a decision susceptible to social, economic, or political policy analysis. *Id.* (citing *O'Toole*, 295 F.3d at 1033–1034). The decision need not be grounded in policy considerations; however, it must be, by its nature, susceptible to a policy analysis. *Miller*, 163 F.3d at 593. Then, where the exercise of discretion is involved, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

The Ninth Circuit has identified a "dominant theme" in cases involving the discretionary function exception, specifically the "need to distinguish between design and implementation."

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS – 5**

*Whisnant*, 400 F.3d at 1181.  The *Whisnant* court described that circuit precedent has "generally held that the *design* of a course of governmental action is shielded by the discretionary function exception, whereas the *implementation* of that course of action is not."  *Id.* (footnote omitted). The panel went on to state that "relatedly, matters of scientific and professional judgment – particularly judgments concerning safety – are rarely considered to be susceptible to social, economic, or political policy."  *Id.*  Moreover, the *Whisnant* panel said that "[t]he decision to adopt safety precautions may be based in policy considerations, but the implementation of those precautions is not…. [S]afety measures, once undertaken, cannot be shortchanged in the name of policy."  *Id.* at 1182 (quoting *Bear Medicine v. United States ex rel. Sec'y of the Dep't of the Interior*, 241 F.3d 1208, 1215, 1216–1217 (9th Cir. 2001)).

Finally, in an unrelated case, the Ninth Circuit has held that the discretionary function exception does not limit the government's liability with respect to failing to maintain its property for fiscal reasons:

> The government characterizes its decision to forego needed repairs and maintenance as a proper exercise of agency discretion, in which the BIA was forced to make a judgment call to achieve its policy goals. The O'Tooles argue that allowing the irrigation system to fall into disrepair is no more a conscious regulatory choice than failing to maintain the brakes on a car. Is the government's choice not to make needed repairs on its property due to budgetary constraints more like lighthouse maintenance, *see Indian Towing Co. v. United States*, 350 U.S. 61, 76 (1955) (discretionary function exception does not apply), or more like regulation of airline safety, *see Varig [Airlines]*, 467 U.S. at 814–20 (discretionary function exception applies)? While there is unquestionably an element of subjective characterization to the second part of the discretionary function exception analysis, we believe the O'Tooles have the better argument. We hold that an agency's decision to forego, for fiscal reasons, the routine maintenance of its property— maintenance that would be expected of any other landowner—is not the kind of policy decision that the discretionary function exception protects. Because the BIA advances no other reason for its actions or inactions aside from the choice to spend its limited funds in other ways, the discretionary function exception does not apply.

*O'Toole*, 295 F.3d 1029 at 1035–1036.

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS – 6**

**2.   The discretionary function exception does not apply to Plaintiff's claims.**

The Defendant characterizes Plaintiff's First Amended Complaint as alleging four

distinct acts that must be evaluated through the lens of the discretionary function exception.

Plaintiff does not object to that characterization, which identifies the challenged actions as "(1) a

failure to maintain the winch system; (2) a failure to conduct sufficient inspections to ensure that

the [Idaho Department of Parks and Recreation] was meeting its maintenance obligations; (3) a

failure to adequately warn of the dangers associated with the winch system; and (4) a failure to

adequately design the winch system and/or the dock system."

Each such act, Defendant contends, involves a discretionary function, in that there is no

specific and mandatory statute, regulation, or policy which creates such clear duties upon

Defendant's government employees that all discretion would be removed.  Plaintiff disagrees,

contending that Defendant's lease with the State of Idaho does impose mandatory duties on

Defendant, to which Defendant replies that such duties – including a lease provision calling for

"periodic inspections" – instead contain inherent and wide discretion because the lease supplies

sparse detail regarding the frequency or scope of such duties.  Moreover, Defendant contends

that such lease provisions serve more to put the State of Idaho, as lessee, on notice of rights

Defendant reserved rather than to impose specific and mandatory duties on the Defendant, as

lessor.

Separately, Plaintiff contends that a policy manual adopted by the Corps on November

30, 2014 (Manual EM 385-1-1) imposes mandatory policies concerning the design and

maintenance of winch systems as well as warnings for their operation.  The parties dispute the

significance and applicability of such manual to the claims in this lawsuit.  The manual does

describe, on its face, that it serves to prescribe the "safety and health requirements for all Corps

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS – 7**

of Engineers activities and operations." Plf.'s Mem. in Opp'n 4 (Dkt. 30). Defendant, however, argues that the substantive sections of the manual relied upon by Plaintiff refer not to winch systems, such as are found, but rather to "load handling equipment used to lift and suspend loads in the air, such as cranes and derricks." In contrast, the Defendant argues, "the winches were not lifting anything into the air; they were adjusting the positioning of docks floating on water." Def.'s Reply 2 (Dkt. 33). Although this precise issue was raised both in their respective briefing and at oral argument, the factual assertions[1] that each side relies upon cannot be resolved on the present record.

Plaintiff also draws upon a different operations manual (EM 1110-1-400, effective November 1, 2014) pertaining to Recreational Facilities and Customer Services Standards. Section 1.20 of that manual requires the "Project Delivery Team" to "comply with all applicable local, state, and federal codes, policies, and regulations throughout the design of recreation areas or facilities…." But Plaintiff does not connect the who or how of any link between a "Project Delivery Team" and the winch system at the Dworshak State Park, nor does Plaintiff describe any purported causal connection to alleged violations of "applicable local, state, [or] federal codes, policies, and regulations."

Hence, it is an open question whether these manuals impose any specific and mandatory duties that establish a "policy specifically prescrib[ing] a course of action for an employee to follow" and therefore they are insufficient as currently described in the record to conclude whether the discretionary function exception applies as a matter of law. But that simply means that Plaintiff has not eliminated the possible application of the discretionary function exception.

---

[1] The factual dispute regarding the character of the winch in question was not detailed in Plaintiff's First Amended Complaint, so treating the factual allegations therein as true does not resolve this dispute for the purposes of the instant motion.

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS – 8**

To obtain dismissal of the case based upon the discretionary function, it remains the Defendant's burden to establish that the exception does apply on the facts of this case.  And, on this record, the Court is ultimately persuaded the Defendant cannot meet that burden.  Key to the Court's conclusion is that even if the challenged actions involve some exercise of discretion, they are not the types of actions Congress intended to protect with the exception – *i.e.*, they are not policy decisions which form the second prong of the discretionary function test – i.e., the actions must involve a decision susceptible to social, economic, or political policy analysis.  In other words, the decisions must be, by their nature, susceptible to a policy analysis.  *Miller*, 163 F.3d at 593. Only then, where the exercise of discretion is involved, is it "presumed that the agent's acts are grounded in policy when exercising that discretion."  *Gaubert*, 499 U.S. at 324.

Defendant's argument draws heavily upon the *Gaubert* presumption, but even if one works backward from that presumption, the necessary predicate that the "agent's acts are grounded in policy" does not withstand careful scrutiny.  There is a paucity of facts to draw a link from the Defendant's "acts" to "decisions susceptible to social, economic, or political policy analysis."  That is, Defendant has not shown how maintenance, inspections, warnings, or design – as applicable in the factual setting of this case – implicate any policy analysis.

In contrast, the allegations of failure to maintain, inspect, and warn are drawn from facts that are more in the nature of implementation than they are to decisions of design.  Each of the four challenged actions relates to "matters of scientific and professional judgment – particularly judgments concerning safety" that are "rarely considered to be susceptible to social, economic, or political policy."  *Whisnant*, 400 F.3d at 1181.  The "*design* of a course of governmental action is shielded by the discretionary function exception, whereas the *implementation* of that course of action is not."  *Id.*  Finally, although "[t]he decision to adopt safety precautions may be

based in policy considerations," the "implementation of those precautions is not [and] safety measures, once undertaken, cannot be shortchanged in the name of policy." *Id.* at 1182 (quoting *Bear Medicine v. United States ex rel. Sec'y of the Dep't of the Interior*, 241 F.3d 1208, 1215, 1216–1217 (9th Cir. 2001)).

Defendant does not argue that any of the challenged actions were undertaken (or failed to be undertaken) for fiscal reasons, as under *O'Toole*. However, regardless of whether the challenged actions were due to any decisions or considerations related to cost, the fact remains that the challenged actions are are more like those at issue in *O'Toole* than not, in that they relate to "the routine maintenance of [Government] property."

For these reasons, the Court concludes that Defendant has not met its burden to invoke the discretionary function. Accordingly, Defendant's motion to dismiss the case under Rule 12(b)(1) grounds is denied and the Court will exercise jurisdiction over Plaintiff's claims.

### 3. Rule 12(d) does not convert Defendant's Rule 12(b)(6) motion to a summary judgment motion.

Having denied Defendant's motion to dismiss this case for lack of subject matter jurisdiction under Rule 12(b)(1), Defendant's argument to dismiss Plaintiff's design defect theory of liability under Rule 12(b)(6) for failure to state a claim remains at issue. However, before that issue can be taken up, the Court must consider whether Rule 12(d) operates to convert this portion of Defendant's motion to dismiss into a motion for summary judgment under Rule 56.

Rule 12(d) provides: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Because the applicable standards differ between

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS – 10**

a motion to dismiss for failure to state a claim and a motion for summary judgment, this is a threshold issue that must be resolved before considering the merits of the motion.[2]

Defendant's motion to dismiss is supported by a memorandum and two declarations. Attached to the first declaration are photographs of the winch taken during an inspection where both parties were present, various discovery requests and responses, and a copy of the administrative claim form from an earlier stage of this case as well as Defendant's letter denying Plaintiff's administrative claim.  Attached to the second declaration is a copy of the lease between Defendant and the Idaho Department of Parks and Recreation, and related documents. Defendant's subsequent reply memorandum does not incorporate or attach additional documents.

Plaintiff's opposition is comprised of a memorandum and a declaration of counsel. Attached to the declaration are the two manuals discussed *supra*, Manual EM 385-1-1 and Manual EM 1110-1-400, certain of Defendant's discovery responses, and photographs of the winch system at issue.

Notably, the portion of Defendant's memorandum in support of its motion that argues for dismissal of Plaintiff's design defect theory of liability is brief – only four paragraphs long – and its only reference to any of the extraneous materials attached to the supporting declarations is a single reference to one of Plaintiff's discovery responses.  Likewise, Defendant's reply memorandum devotes just two paragraphs to the Rule 12(b)(6) portion of its motion and its only reference to extraneous materials is an assertion that Plaintiff and his expert conducted a site inspection.

_____

[2] Because Rule 12(d) by its terms applies to motions "under Rule 12(b)(6) or 12(c)," and not motions under Rule 12(b)(1), the portion of Defendant's motion challenging subject matter jurisdiction does not implicate Rule 12(d) – which is why this issue arises here, rather than at the outset of this decision.

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS – 11**

Plaintiff's response memorandum addresses the Rule 12(b)(6) motion in a total of five paragraphs, two of which are a lengthy quotation of the applicable legal standard. Plaintiff does not reference or incorporate extraneous materials in his argument regarding the motion to dismiss his design defect theory of liability.

In this setting, where the record contains extraneous materials but such materials relate to Defendant's Rule 12(b)(1) motion and do not relate to the distinct Rule 12(b)(6) motion, the Court has no difficulty finding that Rule 12(d) is not implicated. With the exception of Defendant's references noted in the prior paragraphs, the Court finds that the parties have not presented "matters outside the pleadings" with respect to Defendant's Rule 12(b)(6) motion, so there is no need to decide whether any filings need to be "excluded" under Rule 12(d). Defendant's two minor references noted above will be excluded from consideration of Defendant's Rule 12(b)(6) motion. Thus, the parties' filings of extraneous materials does not convert Defendant's Rule 12(b)(6) motion to a motion for summary judgment under Rule 56.

**4. Plaintiff's design defect theory of liability is dismissed for failure to state a claim.**

Defendant argues that Plaintiff has failed to allege sufficient facts to support a liability theory based on defective design. Drawing upon state law, Defendant identifies that proof of a case for negligent design requires that plaintiff establish that "(1) the product in question was defective, (2) the defect existed as the product left the manufacturer's control, and (3) that the defective product was the proximate cause of the plaintiff's injuries." Def.'s Mem. ISO MTD 12 (Dkt. 25-1) (quoting *Puckett v. Oakfabco, Inc.*, 979 P.2d 1174, 1179 (Idaho 1999)). Further, the product is only defective "when it exposes a user or bystander to an unreasonable risk of physical injury." *Id.*

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS – 12**

Defendant contends Plaintiff has not sufficiently pled a claim for defective design, in that there is no allegation that Defendant manufactured the winch at issue, there are no facts alleged regarding how Defendant's purported design of the system is defective, and there are no facts alleging how some purported defect caused the brake on the winch to fail.  In sum, Defendant contends, Plaintiff "has not disclosed what the defect is or how it caused his injury."

Plaintiff disagrees. He distinguishes the winch itself from the "winch and dock system together."  He says that his claim alleges that Defendant owns and designed the "dock and winch systems" and that the systems as designed caused the injuries he alleges.  Plf.'s Mem. in Opp'n 11 (Dkt. 30).

The relevant allegations from Plaintiff's First Amended Complaint are these:

> 10. Based on information and belief, the United States designed and installed both the Big Eddy Marina and dock system and the Big Eddy winch system.
>
> ….
>
> 18. On August 15, 2016, Alves adjusted the level of the docks and fuel barge with the winch system in the ordinary and customary manner. Rather than operating in a fashion in which the winch was designed to operate (i.e. allowing tension from the wire rope to be release[d] gradually from the winch system) the winch and/or break system on the winch failed causing the hand wheel to spin rapidly and causing Mr. Alves's left hand to be amputated from his wrist and arm causing grievous injury to Mr. Alves's wrist, forearm, elbow and shoulder.
>
> 19. Alternatively, the Big Eddy Marina winch system and dock were designed defectively such that the winch system failed causing the injuries to Alves on August 15, 2016.
>
> 20. Mr. Alves's injuries were … due to the United States' defective design of the winch system and/or the Big Eddy dock system.
>
> 21. The United States' … defective design caused Alves's injuries. The United States government should be liable to Alves as would any citizen of the State of Idaho.

FAC (Dkt. 24).

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS – 13**

The Rule 12(b)(6) legal standard is well-established and there are myriad cases that describe the nuances of the standard.  Plaintiff describes the standard in this manner:

> "The focus of any rule 12(b)(6) dismissal – in the trial court and on appeal – is the complaint." *Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998). "We review dismissals under Rule 12(b)(6) de novo, accepting as true all well-pleaded allegations of fact in the complaint and construing them in the light most favorable to the [Relators]." *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).
>
> Under the pleading requirements of Federal Rule of Civil Procedure 8, we must determine whether the Complaint contains "sufficient factual matter" that, taken as true, "state a claim for relief is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal citation and quotation marks omitted). Pursuant to this analysis, only pleaded facts, as opposed to legal conclusions, are entitled to assumption of the truth. *Id.* at 1949–50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. If the Complaint does contain such supporting factual allegations, we assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Plf.'s Mem. in Opp'n 11 (Dkt. 30) (quoting *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011)).

Applying this standard, Plaintiff's design defect theory falls short and is subject to dismissal.  Plaintiff contends that "the Big Eddy Marina winch system and dock were designed defectively such that the winch system failed."  FAC ¶ 19 (Dkt. 24).  The alleged failure is a factual allegation that is entitled to acceptance as true for the purposes of this motion.  But the allegation that the system was "designed defectively" is either a legal conclusion or a factual allegation that is not sufficiently supported.  As Defendant points out, Plaintiff does not allege the nature or circumstances of any design defect beyond that it exists and caused the failure.  Such a branch is too bare for the Court "to draw the reasonable inference that the defendant is

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS – 14**

liable for the misconduct alleged."  Rather, it is much closer to alleging "a sheer possibility that a defendant has acted unlawfully" which is insufficient under the case law Plaintiff himself quotes. Defendant's motion to dismiss Plaintiff's design defect claim will be granted.

Finally, the Court must decide whether Plaintiff will be granted leave to amend his First Amended Complaint to attempt to salvage his design defect theory of liability.  He requests such relief, in the alternative, in his opposition to Defendant's motion.  Defendant, for its part, argues that granting leave to amend would be futile.  Relevant here is the fact that Plaintiff was previously granted leave to amend to add his design defect liability theory.  Plaintiff's original Complaint (Dkt. 1) made no mention of a theory of liability premised on a design defect.[3] Plaintiff's motion for leave to amend his Complaint sought to expand on the Complaint based on "Plaintiff's counsel's opportunity to visit and inspect the location and machinery at issue in this suit."  Plf.'s Mot. for Leave to File FAC 2 (Dkt. 18).

Plaintiff's counsel may have had insufficient information to allege a design defect theory of liability in the original Complaint.  If so, later moving to amend (after having made certain of the propriety of bringing the new allegations) is entirely justified.  However, the case was filed on February 5, 2019, after Plaintiff's administrative claim was denied.  Plaintiff's claim form is in the record (Dkt. 25-7 at 3) and it indicates that he was represented by the same counsel he has today by no later than June 19, 2018.  The record is silent on whether counsel visited or could have visited the accident site prior to the joint site visit on September 18, 2019 (Wucetich Decl. ¶ 2 (Dkt. 25-2)), but Plaintiff's First Amended Complaint was filed on October 1, 2019 – more

---

[3] In fact, paragraph 17 of the original Complaint alleged that his injury was caused because the winch failed to "operat[e] in a fashion in which [it] was designed to operate…"  This paragraph is unchanged in the First Amended Complaint, but the Court notes that Rule 8(d)(2) permits a party to plead statements in the alternative.

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS – 15**

than three years after Plaintiff's injury.  That was sufficient time for Plaintiff to research and draft a well-pleaded claim, if it could be supported, sufficient to survive a motion to dismiss for failure to state a claim.  Thus, the Court concludes that the insufficiency of Plaintiff's design defect claim is based on a lack of supporting facts rather than insufficient allegation of supporting facts.  As a result, granting leave to amend the Complaint a second time would be futile; hence, dismissal of Plaintiff's design defect theory of liability will be with prejudice.

## ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 25) is **GRANTED IN PART AND DENIED IN PART** as follows: Plaintiff's design defect theory of liability is **DISMISSED WITH PREJUDICE**.  Defendant's Motion is otherwise **DENIED**.



DATED:  **March 31, 2021.**

_____
Honorable Ronald E. Bush
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS – 16**