UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| TIMOTHY ALVES,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA, DEPARTMENT OF THE ARMY, ARMY CORPS OF ENGINEERS, WALLA WALLA DISTRICT,<br><br>    Defendant. | Case No.: 3:19-cv-00044-REP<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S DAUBERT MOTION**<br><br>**(Dkt. 76)** |

Pending is Defendant's Daubert Motion to Exclude the Expert Report and Testimony of Mark Passamaneck (Dkt. 76). All parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. Dkt. 15. For the reasons stated below, the Court will grant the request to exclude Mr. Passamaneck's opinions about Defendant's responsibilities, obligations, and duties of care. In all other respects, the Court will deny the motion.

## BACKGROUND

At the time of the accident that gave rise to this case, Plaintiff Timothy Alves was working at Dworshak State Park as a seasonable maintenance aide with the Idaho Department of Parks and Recreation ("IDPR"). Def.'s Stmnt of Facts ¶ 13 (Dkt. 59-2). One of Mr. Alves's duties as a maintenance aide was to equilibrate the docks at the marina using an eight-winch cable system. *Id.* ¶¶ 4, 18. On August 15, 2016, Mr. Alves was adjusting one of the winches in this system when his left hand became caught in the winch's rapidly spinning wheel. *Id.* ¶¶ 19-20; Def.'s MSJ at 3 (Dkt. 59-1); Pl.'s Amended Compl. ¶ 18 (Dkt. 24); Passamaneck Rpt. at 1 (Dkt. 76-4). As a result of this accident, Mr. Alves suffered serious injuries to his hand, arm, and

**MEMORANDUM DECISION AND ORDER - 1**

shoulder, including the amputation of his left hand. Def.'s MSJ at 9 (Dkt. 59-1); Pl.'s Amended Compl. ¶ 18 (Dkt. 24).

The winch that injured Mr. Alves, like the land on which Dworshak State Park is located, is owned by Defendant the Army Corps of Engineers ("ACOE"), and leased to IDPR under the terms of a long-term lease. Def.'s Stmnt of Facts ¶¶ 1-5 (Dkt. 59-2).[1]

Mr. Alves has alleged that the United States is liable for in his injuries because (1) ACOE failed to maintain the winch system as required by the terms of its lease with IDPR, (2) ACOE failed to conduct sufficient inspections to ensure that IDPR was meeting its maintenance obligations under the lease, and (3) ACOE failed to adequately warn Mr. Alves of the dangers associated with operating the winch system. Pl.'s Amended Compl. ¶¶ 15-16, 20 (Dkt. 24).

To support his theory of the case, Mr. Alves intends to present testimony at trial from an engineering expert, Mark W. Passamaneck. Mr. Passamaneck has opined that ACOE's failure to routinely inspect and maintain the winch, provide adequate warning signs and labels, and oversee Mr. Alves's training, "directly caused" Plaintiff's injuries "to a reasonable degree of engineering certainty." Passamaneck Rpt. at 5 (Dkt. 76-4). Because Mr. Alves has never alleged a failure to train claim and because the Court has granted Defendant summary judgment on Plaintiff's failure to inspect and failure to warn claims, the most important of these opinions relate to ACOE's alleged failure to maintain the winch. See 2/22/2022 MDO (Dkt. 73). Defendant has moved to exclude these opinions under Federal Rule of Evidence 702.

---

[1] The Court's summary judgment order contains a more detailed background section, including a lengthier account of the relevant facts. See 2/22/2022 MDO at 1-5 (Dkt. 73). Rather than restate all the same facts here, the Court incorporates the background section of the summary judgment ruling by reference.

**MEMORANDUM DECISION AND ORDER - 2**

## **DAUBERT STANDARD**

Federal Rule of Evidence 702 permits a witness qualified by "knowledge, skill, experience, training, or education" to offer expert testimony where: (i) the testimony will be helpful to the trier of fact, (ii) the opinion is based upon sufficient facts or data; (ii) the opinion is the product of reliable principles and methods; and (iii) the witness has applied those principles and methods reliably to the facts of the case. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993); *Kumho Tire co. v. Carmichael*, 526 U.S. 137, 147 (1999).

Before admitting testimony under this Rule, the district court must perform a gatekeeping role to "assure that the expert testimony both rests on a reliable foundation and is relevant to the task at hand." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quotation marks and citation omitted). In doing so, the Court's analysis focuses "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The Court's "task . . . is to analyze not what the experts say, but what basis they have for saying it." *Wendell v. GlaxcoSmithKlein LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (quoting *Daubert*, 43 F.3d at 1316).

These are flexible inquiries, "subject to no set list of factors." *United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000). A district court, consequently, enjoys "broad latitude" in structuring how it determines whether expert testimony is reliable and relevant. *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020). For example, district courts are not universally required to hold a *Daubert* hearing before ruling on the admissibility of scientific or other technical evidence. *In re Hanford Nuclear Reservation Litig. v. E. I. Dupont*, 292 F.3d 1124, 1138 (9th Cir. 2002). Where the record is adequate, a district court may rule on a *Daubert* motion based on the expert's reports, deposition testimony, or affidavits. *Id.* at 1138-1139.

**MEMORANDUM DECISION AND ORDER - 3**

This leeway is at its apex in a bench trial. As the Ninth Circuit has recognized, "*Daubert* is meant to protect juries from being swayed by dubious scientific testimony. When the district court sits as the finder of fact, there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) (quoting *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012)). In bench trials, therefore, a district court may make its reliability determination during, rather than in advance of, trial. *Id.* In other words, when conducting a bench trial, a district court may admit the expert evidence "subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." *Id.*

Whichever procedure the district court employs, in excluding or allowing testimony under Rule 702, the district court acts as "a gatekeeper, not a fact finder." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022). In all cases, challenges going to the weight of the evidence and or to an expert's credibility must be reserved for the finder of fact, whether that be the jury or the judge. *Id.* ("shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion") (internal citations omitted); *City of Pomona v. SQMN. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (Rule 702 is meant to "screen" out "unreliable nonsense opinions, . . . not exclude opinions merely because they are impeachable").

## DISCUSSION

Defendant moves to exclude the expert testimony of Mark Passamaneck as untested, unreliable, and unhelpful. Broadly speaking, Mr. Passamaneck's opinions fall into two categories: opinions about Defendant's duty of care and opinions about the causes of Plaintiff's injuries. While the first of these are inadmissible, the second are not.

**MEMORANDUM DECISION AND ORDER - 4**

I.      Mr. Passamaneck's Opinions about ACOE's Duty of Care

In his expert report, Mr. Passamaneck opines that ACOE, as the owner of the winch, had the following duties:

- "to ensure that the operators of the winch were properly trained and that the manufacturer's warning labels and tags were affixed to the winch;"
- "to provide a suitable winch, properly installed as well as to provide operation and maintenance manuals;" and
- to establish "an inspection, testing, and maintenance program" that guaranteed the winch was properly maintained.

Passamaneck Rpt. at 4-5 (Dkt. 76-4).  Defendant contends that these opinions are unreliable "lay legal conclusions," based on an "incomplete" review of the record.  Daub. Mtn at 2 and 11 (Dkt. 76-1).  The Court agrees that these opinions should be excluded under Rule 702.

Mr. Passamaneck is an engineering, not a legal expert.  Passamaneck Rpt. at 6 (Dkt. 76-4) and Passamaneck Depo. at 6:5-19, 25:23-26:12, 37:9-10 (Dkt. 76-3).  He has no training in contract law, lease obligations, or landlord/tenant law.  Passamaneck Depo. at 25:23-26:12 (Dkt. 76-3).  Yet his opinions about ACOE's responsibilities and liability stray directly into these areas.  Specifically, Mr. Passamaneck compared ACOE to a commercial rental company, opined on the obligations of such companies as lessors, and, relying on this analogy, insisted that ACOE owed Plaintiff a broad range of *non-delegable* duties based solely its status as an owner and lessor of the winch.  Passamaneck Rpt. at 4-5 (Dkt. 76-4).  These opinions relate directly to how ACOE should have structured its lease with IDPR.

While Mr. Passamaneck attempted to justify these opinions as "engineering" opinions about industry-accepted standards of care, a review of his testimony does not support this position.  For example, when first asked whether his opinion about ACOE's alleged training

**MEMORANDUM DECISION AND ORDER - 5**

responsibilities was a "legal conclusion," Mr. Passamaneck responded, "I don't know." Passamaneck Depo. at 28:18-29:9 (Dkt. 76-3). In addition, when pressed for the bases of his opinions, Mr. Passamaneck repeatedly pointed, among other things, to legal sources, such as lawsuits and courts. *See*, *e.g.*, *id.* at 35:1-6 ("people get sued every day for not having provided the training, for not having ensured that a person is trained before they give them the specialized piece of equipment"), *id.* at 37:7-9 (lessors "have an obligation to train. And the courts have said that. You're the attorney. Go find it."), and *id.* at 37:12-16 ("The standard of care is, when you represent that you are going to loan, lease a piece of equipment to someone that's not in the general use, that you ensure that they know how to use it. If you're not, you're liable. And the courts have said that over and other [sic]."). Consistent with this testimony, Mr. Passamaneck admitted, on cross examination, that the obligations ACOE supposedly owed Plaintiff "cross[ed] the lines between just basic morality and law and engineering. It has all three components of that." *Id.* at 35:9-11.

This concession reflects the legal substance embedded in Mr. Passamaneck's opinions. Rather than identifying engineering deficiencies in Defendant's training, maintenance, or warning activities, Mr. Passamaneck attempts to define the scope of Defendant's duties based on Defendant's legal status as a landlord and lessor. Such opinions are outside Mr. Passamenck's expertise and must be excluded. *See Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011) (opinions outside the areas of an expert witness's expertise are properly excluded "for lack of qualification"); *see also Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003) ("An expert may be generally qualified but may lack qualifications to testify outside his area of expertise.").

Setting issues of expertise aside, Mr. Passamaneck's opinions about ACOE's obligations and responsibilities do not satisfy Rule 702's reliability standards. To be admissible under Rule

**MEMORANDUM DECISION AND ORDER - 6**

702, expert testimony must be grounded upon sufficient facts or data and be the product of reliable principles and methods.  Fed. R. Evid. 702.  Here, Mr. Passamaneck's opinions about ACOE's liability relate to ACOE's role as a lessor.  Mr. Passamaneck, however, never reviewed the relevant lease and has no knowledge of the terms of the lease.  Passamaneck Depo. at 16:7-14, 32:24 (Dkt. 76-3).  When asked if his opinion would change if the lease stated that IDPR was responsible for winch maintenance, Mr. Passamaneck said, "I don't know." *Id.* at 32:22-33:1.  These exchanges make clear that Mr. Passamaneck's opinions comparing ACOE's duties as a lessor to that of a commercial rental equipment company are unmoored from the facts of this case and are not the product of reliably applying industry knowledge to help determine the normal standard of care for someone in ACOE's position.

Finally, admitting Mr. Passamaneck's lay legal opinions would not aid the Court, as the trier of fact, in resolving this case.  *See Heishman v. Ayers*, 621 F.3d 1030, 1042 (9th Cir. 2010) ("Although some judges may find expert testimony helpful, it is within a district court's discretion to exclude proposed expert testimony concerning a legal standard of care and to rely solely on the briefs.").  At summary judgment, the Court issued detailed and informed rulings regarding the scope of Defendant's duties of care under binding Idaho law.  *See* 2/22/2022 MDO (Dkt. 73).  The Court will determine who was responsible for maintaining the winch that injured Plaintiff in accordance with this law and the factual evidence presented at trial, not Mr. Passamaneck's superfluous views on the legal responsibilities of equipment rental companies.

Defendant's motion to exclude Mr. Passamaneck's testimony is granted in this limited regard.  Mr. Passamaneck's opinions about ACOE's obligations and responsibilities will be excluded under Rule 702 as unqualified, unreliable, and unhelpful.

**MEMORANDUM DECISION AND ORDER - 7**

      II.      <u>Mr. Passamaneck's Opinions about the Condition of the Winch and the Causes of Plaintiff's Injuries</u>

In addition to pronouncing on ACOE's duty of care, Mr. Passamaneck's report identifies three causes of the work-place accident that injured Plaintiff: lack of winch inspections and maintenance, lack of proper warning signs, and lack of appropriate training. Passamaneck Rpt. at 5 (Dkt. 76-4). Defendant lodges two attacks on the reliability of these opinions.

First, Defendant argues that Mr. Passamaneck's opinion that lack of maintenance caused the winch to rapidly free spool on the day of the accident is unreliable because (i) Mr. Passamaneck only viewed the winch three years after the accident and (ii) Mr. Passamaneck did not reconstruct the accident. While these are reasonable grounds for impeachment, the Court is not convinced that the timing of Mr. Passamaneck's site visit or the lack of a formal accident reconstruction render his opinions "unreliable nonsense opinions." *See City of Pomona*, 750 F.3d at 1044. It is undisputed that Mr. Passamaneck is a qualified mechanical engineer with "eighteen years of experience in the forensic field" investigating mechanical product failures and injury causation. Passamaneck CV (Dkt. 76-4, pg. 11). In his deposition, Mr. Passamaneck indicated that his opinions about the condition of the winch were based on personally observing the winch, which had not received any maintenance since the accident, and drawing informed deductions about the likely condition of the winch three years prior. Passamaneck Depo. at 13:1-22 (Dkt. 76-3) (explaining that he could not say what the wear on the brake material was at the time of the accident, but could affirm that the corrosion, dust, and scoring had developed over a "long period of time, not just a couple years"). Mr. Passamenck's opinions about how the corrosion, lack of lubrication, and uneven wear would impede brake operations would also appear to be based on his training, qualifications, and experience as an engineer. *See* Passamaneck Rpt. at 2-3, 6 (Dkt. 76-4). In other words, Mr. Passamaneck drew on his many

**MEMORANDUM DECISION AND ORDER - 8**

years of experience with mechanical equipment to (i) extrapolate from the condition of the winch in 2019 to its condition in 2016 and (ii) to assess how this condition would have contributed to the accident.

This is not the kind of inherently unreliable methodology that warrants excluding Mr. Passamaneck's testimony pretrial. *Elosu*, 26 F.4th at 1026 ("[e]xperts working in specialized, scientific, and uncertain fields regularly extrapolate from existing data. . ."). To the extent Mr. Passmaneck's experience does not fully support his inferences, the Court finds that the most prudent approach is to consider these potential weaknesses in determining what weight to accord the testimony, rather than through a threshold determination of admissibility. *See Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017) (where an expert's "opinions are not . . . 'junk science' . . ., the interests of justice favor leaving difficult issues in the hands of the [fact finder] and relying on the safeguards of the adversary system— vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof") (internal citations omitted); *see also Scantlin v. GE*, 510 F. App'x 543, 545 (9th Cir. 2013) (unpublished) ("The trial court's role as gatekeeper [under Rule 702] is not intended to serve as a replacement for the adversary system.") (quoting the Advisory Committee's Note on the 2000 Amendments to Fed. R. Evid. 702).[2]

---

[2] If, after hearing Mr. Passamaneck's testimony, the Court finds that it falls short of the *Daubert* standards, the Court will give it no weight. This is not an invitation for Defendant to reflexively renew its *Daubert* motion at trial; it is simply a precaution recognizing that the Court has elected not to hold a *Daubert* hearing and has not, therefore, had the benefit of the most detailed explanation of Mr. Passamaneck's methodology and principles in ruling on Defendant's motion. Should unexpected and serious reliability issues arise at the bench trial, the Court will address them at that time. *See Flores*, 901 F.3d at 1165. The Court finds that this is the best approach to honor its gatekeeping role while also ensuring the timely, efficient, and economical resolution of this action. *Id.*

**MEMORANDUM DECISION AND ORDER - 9**

The second challenge Defendant raises to the reliability of Mr. Passamaneck's testimony relates to the multiplicity of contributing causes to Plaintiff's injuries. Daub. Mtn at 9-11 (Dkt. 76-1). Defendant argues that because Mr. Passamaneck "freely admits there could have been several different causes" of the accident, his testimony that lack of winch maintenance was one of those causes is too unreliable to be admissible at trial. *Id.*

This argument does not hold water. An expert need not preclude all other causes for that expert's testimony to be trustworthy or relevant. In Idaho, a plaintiff generally may recover damages if the plaintiff shows that a defendant's negligent conduct was the actual and proximate cause of his injuries. Idaho Civil Jury Instruction ("IDJI") 2.30.2; *see also Newberry v. Martens*, 142 Idaho 284, 288 (Idaho 2005) (discussing actual and proximate cause). Critically, an actual and proximate cause "need not be the only cause." *Garcia v. Windley*, 144 Idaho 539, 543 (Idaho 2007) (quoting IDJI 2.30.2). Idaho courts and the Idaho pattern jury instructions have long recognized that an injury may have multiple contributing causes. *Id.* For example, "when the negligent conduct of two or more persons or entities contributes concurrently as substantial factors in bringing about an injury, the conduct of each may be a proximate cause of the injury regardless of the extent to which each contributes to the injury." IDJI 2.30.2. Similarly, a plaintiff's own contributory negligence may be one of multiple causes of an accident. In these cases, the plaintiff's contributory negligence – here, for example, potential user error – "shall not bar recovery" as long as "such negligence . . . was not as great as the negligence, gross negligence or comparative responsibility of the person against whom recovery is sought." I.C. § 6-801.[3] In these cases, the question facing the trier of fact is not whether the defendant's

---

[3] In both of these circumstances, the amount of damages a plaintiff may recover will frequently be subject to reduction or apportionment. *See* I.C. §§ 6-801 and 6-803. But that is an issue for trial that is beyond the scope of the present *Daubert* motion.

**MEMORANDUM DECISION AND ORDER - 10**

negligence was the only cause of an accident, but whether it was a "substantial factor in bringing about the injury, loss or damage." IDJI 2.30.2. Mr. Passamaneck's view that lack of maintenance, lack of warnings, and lack of training jointly caused Plaintiff's injuries is relevant evidence for the Court to consider in answering this question vis-à-vis Defendant's alleged failure to maintain the winch.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that

1. Defendant's Daubert Motion (Dkt. 76) is GRANTED in part as follows:

    a. Mr. Passamaneck's opinions about ACOE's obligations, responsibilities, and duties of care are excluded under Rule 702.

2. Defendant's Daubert Motion (Dkt. 76) is DENIED in all other respects.

DATED: June 10, 2022

Raymond E. Patricco
Chief U.S. Magistrate Judge

MEMORANDUM DECISION AND ORDER - 11